GALVESTON SHOE & HAT COMPANY v. JOHN F. ROWE, TRUSTEE.

Decided February 26, 1908.

**1.—Venue—Fraud—Private Corporation.**

Upon a plea of privilege by a private corporation to be sued in the county where its principal office and place of business was situated, evidence considered, and held to sustain the action of the trial court in overruling the plea both on the ground of fraud and because the cause of action against the corporation arose in the county in which the suit was filed. (Sections 7 and 23 of article 1194, Rev. Stats.)

**2.—Continuance—Want of Diligence.**

A request or demand upon the opposite party to produce his mercantile books in court on the trial, is not sufficient diligence to entitle the party making the demand to a continuance because of the absence of said books. He should have applied for a subpoena duces tecum.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Jno. W. Davis,* for appellant.—Under sec. 7 of art. 1194, authorizing suits to be brought in a county other than defendant's residence in cases of fraud, the fraud must have been actually committed and concluded in the county in which the venue is laid. Baines v. Mensing, 75 Texas, 200; McGlaughlin v. Shannon, 22 S. W., 117; Weeks v. S. B. & T. Co., 56 S. W., 247.

To hold jurisdiction of a party out of his county under the fraud

clause in the venue statute, the fraud must be committed in the county in which suit is brought, and if the transaction is a sale, it must be in the county of the sale. Boothe v. Fiest, 80 Texas, 141; Lindsey v. State, 66 S. W., 332.

Promises are outside domain of law unless they create a contract. Jones Lumber Co. v. Villegas, 28 S. W., 558.

A contract is made where the acceptance is made, where it first takes effect. 9 Cyc., 670.

A contract is incomplete until the minds meet on all material elements. 7 Eng. & Amer. Enc. of Law, 138.

If anything is to be done about the subject matter of a contract it is not a contract until such things are done. 1 Mecham on Sales, sec. 505, et seq.

If goods are to be measured, etc., in order to identify and ascertain price, the contract is incomplete. 1 Mecham on Sales, secs. 515-520; Cleveland v. Williams, 29 Texas, 204.

Without regard to negotiations preceding a sale, no sale is made until agreement to deliver specific article. Rohrbough v. Leopold, 68 Texas, 254.

"In sale of goods, anything remaining to be done by the seller, such as counting, weighing and measuring, the title does not pass when it is necessary to do either of these things in order to separate the goods from a larger mass of which they form a part." Allen v. Melton, 65 Texas, 218; Woods v. Half, Weis & Co., 44 Texas, 633; Moore v. Byatt, 47 S. W., 752.

In an action for fraud it is necessary that there should be established a misrepresentation as to an existing fact. Doctor v. Gilmartin, 5 N. Y. St. Rep., 894; New York Life Co. v. Miller, 32 S. W., 550.

On promissory statements: 20 Cyc., p. 20; Moore v. Cross, 87 Texas, 557.

Fraud is dependant on existing fact, not on promise to perform in future. Bigham v. Bigham, 57 Texas, 238; Bray & Co. v. Titterington, 84 Texas, 218; People v. Healy, 128 Ill., 9.

The rule that if a promise is made with a fraudulent intent of the maker not to keep it, the breach of the promise may be regarded as a fraud does not obtain. Murray v. Smith, 42 Ill. App., 548; McAlister v. Indianapolis Co., 15 Ind., 11; Long v. Woodman, 58 Me., 49; Habbord v. Long, 60 N. W., 50; Bullock v. Woolridge, 42 Mo. App., 356.

Must be present representation and not mere promise as to future. 2 Mecham on Sale, sec. 870.

Under section 23, article 1194, of Revised Statutes, allowing suits to be commenced in any county in which the cause of action or any part thereof arose, it is not that the cause of action arose by reason of negotiations or that negotiations comprise the cause of action, but if such negotiations culminated in a contract in another county, then the cause of action in its entirety arose in such other county.

"A cause of action is made up of the contract and the breach of it. It takes these two parts to constitute the whole cause of action, within the meaning of the statute quoted (art. 1194, sec. 23), other-

wise the added phrase, 'or a part thereof' would be without meaning." Westinghouse E. & M. Co. v. Troell, 70 S. W., 324; Com. Co. v. Hart, 20 S. W., 131; Phillio v. Blythe, 12 Texas, 124; Bray Co. v. Hill, 63 Texas, 383; Gulf, W. T. & P. Ry. Co. v. Browne, 66 S. W., 341.

Contract is the cause of action, together with its performance or breach. Phillio v. Blythe, 12 Texas, 124.

Cause of action generally means the breach of duty by the defendant, or the act or omission without which there would be no cause of action or right of recovery. 22 Enc. of Plead. and Prac., 791; Hosley v. Wisconsin, 86 Wis., 463.

To sue in a county other than defendant's residence, plaintiff must bring his case clearly within one of the exceptions. Cohen v. Munson, 59 Texas, 237; Lindheim v. Muschamp, 72 Texas, 35.

Where an application for a continuance is based upon equitable ground and affidavit for same shows it presents itself to the sound discretion of the court, it can not be exercised arbitrarily. Chilson v. Reeves, 29 Texas, 276; Payne v. Cox, 13 Texas, 480; Jordan v. Robson, 27 Texas, 612; Stoddard v. Garhart, 30 Texas, 200.

An innocent misrepresentation of a material fact made to the seller of goods by the buyer, relied on by the seller entitles the latter to a rescission of his contract to the same extent as if the misrepresentation was fraudulent. Haldeman .v. Chambers, 19 Texas, 3; Wilcox v. Iowa, 32 Ia., 367; 2 Mecham on Sales, sec. 864, and notes.

The person seeking credit and making a statement of the partnership indebtedness of the firm to which he belongs, for the purpose of inducing the credit, and fails to state that he has individual indebtedness to a large amount for which his partner is surety, is guilty of such a concealment of fact as to make it a misrepresentation. Wintz v. Dougall, 17 Texas, 372; Bishop on Contracts, sec. 660; 2 Mecham on Sales, sec. 868.

"To tell half a truth only is to conceal the other half. Concealment of this kind under the circumstances makes ·a false representation." 2 Mecham on Sales, sec. 868; Newell v. Randall, 32 Minn., 171.

"A party who undertakes to make a statement respecting his solvency or ability to pay is bound to make a fair one or suffer the consequences of a fraudulent misrepresentation." 2 Mecham on Sales, sec. 893; Hughes on Contracts, sec. 99; Tiedeman on Sales, sec. 159; Ricker v. Chicago, 89 Fed. Rep., 251.

"One asked for a statement, makes it, true as far as it goes, but which would show up different, if other facts had been given, in such cases the facts stated make a false impression, by reason of the concealment of material facts, the suppression of fact by one under obligation to disclose it, is a fraud." Duvoe v. Brandt, 53 N. Y., 462; Tiedeman on Sales, sec. 159.

*Prendergast & Williamson,* for appellee.—On the question of the fraud committed in McLennan County: Rev. Stats., art. 1194, subdiv. 7; Hunt v. Scott, 67 S. W., 451; Howe v. Golt, 73 S. W., 828; Trinity, etc., v. Stockwell, 81 S. W., 794; Wintz v. Morrison,

17 Texas, 383; Boothe v. Fiest, 80 Texas, 141; 5 Ency. (1st ed.), 318.

On the question of whether the cause of action or a part thereof arose in McLennan County, and fraud: Rev. Stats., art. 1194, subdiv. 23; Mangum v. Lane Rice Co., 95 S. W., 605; Western Wool Com. Co. v. Hart, 20 S. W., 131; Westinghouse, etc., v. Troel, 70 S. W., 325; Peach Lumber Co. v. Ayres, 91 S. W., 387; Eq. Mortgage Co. v. Weddington, 21 S. W., 577.

KEY, ASSOCIATE JUSTICE.—November 6, 1905, W. R. Carroll and W. H. Carroll, merchandising under the firm name of W. R. Carroll & Co., made an assignment to John F. Rowe, as trustee for the benefit of their creditors. The property transferred was a stock of merchandise in the town of Tama, Coryell County, Texas. Thereafter Rowe, as trustee, brought this suit in the District Court of McLennan County against Galveston Shoe & Hat Company, a private corporation, seeking to recover the value of a portion of the stock of merchandise referred to, which he alleged the defendant obtained possession of by fraudulent representations made in McLennan County, and thereafter appropriated the property to its own use and refused to pay him therefor.

The defendant filed a plea in abatement, showing that it was a resident of Galveston County, which plea was in due form to raise the question of venue. The defendant followed its plea in abatement with a general demurrer, general denial and a special answer wherein it was alleged that the merchandise, for the value of which the plaintiff sought to recover, was procured by Carroll & Co. by fraud and deceit, and under such circumstances as entitled the defendant to a rescission of the sale, and to retake and dispose of the property as it had done without liability to the plaintiff or anyone else. The defendant also filed a cross-bill, impleading W. R. Carroll & Co.

The plaintiff filed a supplemental petition in which, among other things, he averred that if any false statements were made by Carroll & Company in reference to their financial affairs, that an agent of the defendant helped prepare such statement, and knowingly participated in any misrepresentations contained therein.

There was a nonjury trial which resulted in a judgment for the plaintiff against the defendant, Galveston Shoe & Hat Company for $891. Judgment was also rendered in favor of Galveston Shoe & Hat Company against W. R. and W. H. Carroll for the sum of $2082.28. Galveston Shoe and Hat Company has appealed and seeks a reversal of the judgment.

The trial judge filed findings of fact, which are as follows:

"About the middle of March, 1905, G. W. Neathery, the traveling salesman of defendant, Galveston Shoe & Hat Company, a private corporation, went to the place of business of W. R. Carroll & Co., at Tama, Coryell County, Texas, for the purpose of selling said firm a bill of goods; that while there he made such investigations as satisfied him as to the value of the stock of goods which Carroll & Co. had in the store at that time, and went to their homes on

their respective farms nearby and investigated the same, so as to satisfy himself of their value.    He succeeded in procuring from them an order on the 16th of March, 1905, for goods to the amount of $807.70; that upon leaving Carroll's store defendant's salesman, G. W. Neathery, went to Gatesville and was accompanied to Gatesville by W. R. Carroll.    After reaching Gatesville Neathery requested of Carroll a statement of the financial condition of W. R. Carroll & Co. and produced a blank form of the Galveston Shoe & Hat Co. with its name printed throughout the blank form, upon which to make said statement.

"The date of the statement, the words 'McLendon Hardware Company, Waco,' 'store building and lot $700,' notes secured by liens '$700,' appearing in said statement were written therein by defendant's agent Neathery, and he placed the valuation on the stock of goods and homestead of the Carrolls.    This statement and its probative force as evidence can not be appreciated without being seen, and therefore I have ordered the original to be sent up with the record, as in my judgment it is so imperfect and contradictory as to show upon its face to have been made by a man so ignorant of mercantile matters as to carry grave doubt to the mind of an ordinarily prudent person as to his ability to make out a statement sufficiently accurate to base a line of credit upon.

"Neathery forwarded the order and statement which he had thus procured from Carroll to defendant; when received, said company caused the order to be laid aside and not filled for the time being, and Frenkel, its secretary and treasurer and credit man, wrote a letter to said traveling salesman, Neathery, who took said order, to the effect he thought Neathery had sold Carroll a little bit too much goods, and thereafter said order was filled and the goods shipped to the Carrolls.    In reply to Frenkel's letter Neathery replied that he thought they were perfectly good for every nickel they bought.    On April 13, 1905, defendant company shipped to Carroll & Company on their order other goods of the value of $72. Afterwards, while Neathery was in the store of the defendant at Galveston he was called upon for further information by Frenkel in regard to W. R. Carroll & Co., and at that time Frenkel discussed fully with Neathery Carroll & Co.'s condition at that time and the crop prospects in that county and their neighborhood.    This was before he left Galveston to obtain orders for the fall trade, and while on said trip, on July 3, 1905, he procured from W. R. Carroll & Co. another order for goods amounting to the sum of $886.65, which he forwarded to the defendant company, and which was filled and shipped out as requested, and on August 15, 1905, defendant company sold Carroll Co. a bill to the amount of $36, nothing having been paid up to that time by W. R. Carroll & Co. on the March order, which was due July 1, 1905.

"About November 1, 1905, Charles Frenkel, the secretary-treasurer of the defendant company, went to W. R. Carroll & Co.'s place of business in Coryell County, and there ascertained from them that they were unable to meet their indebtedness, and tried to get them to return to him such goods as had been sold them by the defendant

company as were then in their stock, and informed them that he would sequestrate them if he could not otherwise obtain possession, claiming that Carroll had bought them on misrepresentation.   Carroll & Company declined to surrender the goods, stating they desired to treat all their creditors equally, and informed said Frenkel that they were going to Waco to have a conference with all their creditors, and would meet him there on the 6th day of November, 1905. On that day there was held at the Rotan Grocery Company's office in Waco, a meeting of the creditors of W. R. Carroll & Company, which was attended by said Frenkel, where it was agreed by the creditors that W. R. Carroll & Company should make an assignment of all their property to John F. Rowe for the benefit of their creditors generally.   Frenkel at this meeting claimed that the goods procured by Carroll & Company from his firm were obtained through misrepresentation, and that unless some satisfactory arrangements were made in regard thereto that he would sue to recover said goods and sequestrate the same; whereupon it was agreed between him and Rowe, as trustee for all the creditors, that in order to save the expense of a sequestration suit that he should accompany Rowe to the Carrolls' place of business in Coryell County, and that all the goods of the defendant which could be found in the stock of Carroll & Co. at that time should be set aside and sold either by Frenkel or Rowe, and the proceeds of the sale, if sold by Frenkel, should be turned over to Rowe and held by him, or if the goods were sold by Rowe, that he should retain the proceeds of the sale, and that defendant company would institute its suit therefor in McLennan County, Texas, against said Rowe for such proceeds in order to test the question as to whether or not the defendant company should recover said goods on account of having been obtained through fraud by W. R. Carroll & Co.   This agreement was made on the part of said Frenkel with fraudulent intent on his part of obtaining possession of the proceeds of said goods and retaining the same from said trustee.   With this understanding the assignment was made by W. R. Carroll & Co. to Rowe on said day, and they with Frenkel and Rowe, at once went to Coryell County, to the store of Carroll & Company, where, in accordance with the agreement that had been made in Waco, the goods purchased from the defendant company were identified, separated from the remainder of the stock and laid aside and that night were sold by Frenkel on credit for $825, he taking the note of the purchaser therefor, payable to defendant company, and he, Frenkel, agreeing at the time with Rowe that as soon as he reached Galveston he would forward to Rowe the company's check for the amount thereof, $825, for which he had sold said goods, to be held by said Rowe subject to the agreement that had been made in Waco as to holding said funds for future litigation.   After Frenkel had reached Galveston the defendant company declined to deliver to Rowe the proceeds of said sale, or, in other words, their check for the proceeds, and hence this suit to recover the same.

"At the time W. R. Carroll and Neathery made out the statement of Carroll & Co.'s financial condition, Carroll was not requested

by Neathery to give the individual assets or liabilities of either himself or his partner, W. H. Carroll; Neathery and Carroll both testifying that Carroll was not asked to state the same, that the subject of individual debts did not come up at all, and that Carroll, being away from his books, could only give the partnership assets from recollection. At that time the firm owed the Rotan Grocery Co. $449.31, as shown on this trial, which Carroll gave in the statement as $400; it owed Sanger Bros. $464.81, stated at $400; it owed the McLendon Hardware Company an amount not shown, which amount Carroll stated to Neathery at the time he did not know. W. R. Carroll & Co. were at that time running a weekly account with Cochran & Co., and on the day said statement was made, owed Cochran & Co. about $75 on that week's account, and the same way with the Waters-Pierce Oil Company, to whom it owed at that time about $33, and also a few other small accounts of like nature that were not included in the statement. At the time the statement was given, W. R. Carroll individually was indebted to various persons to the extent of some $1000 or $1500, one of these debts, $450, being a lien upon the store house of W. R. Carroll & Co., said lien having become fixed prior to W. H. Carroll buying an interest in said business, which he did shortly prior to the giving of the first order by said firm to the defendant company. W. H. Carroll was surety on some of the notes given by W. R. Carroll for a portion of this indebtedness. I find the value of the stock in the store of W. R. Carroll & Co., on the 16th day of March, 1905, to be about $4000, and that they held notes secured by mortgage to the amount of $7000, as stated in said statement. These notes were what were known as advancement notes of farmers, and the full amount thereof had not been advanced to the makers at the time said statement was made, there having been advanced at that time some $250 or $300. The evidence also shows that the value of live stock not exempt under State laws to have been $1200, and the store and lot were probably worth about $700, as stated therein.

"I further find that W. R. Carroll had only been in the mercantile business a short while, was a man thirty-five years of age, his father, W. H. Carroll, 68 years of age, both farmers, and that defendant's agent who procured the orders was fully cognizant of all these facts, was present while the statement was being made, and assisted therein, and that the sales made by the defendant company to W. R. Carroll & Co. were not made exclusively upon said statement, and that they were not caused to make the same because of their reliance on the correctness of said statement, that the same was intended by W. R. Carroll to be correct, and did set forth the financial condition of W. R. Carroll & Co. at the time it was given to the best of W. R. Carroll's ability to give the same at the time and under the circumstances under which it was given, and said statement does, to a reasonable extent, set forth approximately the financial condition of said partnership at that time. Defendant Galveston Shoe & Hat Company's principal office and place of business is in Galveston, Texas, and it has no office or place of business

in McLennan County, Texas, nor any local agent in McLennan County, Texas."

*Opinion.*—The first assignment of error is addressed to the action of the court in overruling the defendant's plea in abatement, asserting its right to be sued in Galveston County. The second assignment assails the trial judge's finding of fact to the effect that an agreement was made by appellant in McLennan County, Texas, to pay for the goods involved in this litigation, with the fraudulent intent on its part of obtaining possession of the proceeds of said goods, which constituted such fraud as authorized appellee to sue appellant in McLennan County. We find testimony in the record which supports the finding in question.

The trial court held as a conclusion of law that such fraud was committed by appellant's agent Frenkel in making the agreement referred to, in McLennan County, as would authorize the suit in that county under both section 7 and section 23 of article 1194 of the Revised Statutes, and that conclusion is complained of by the third assignment of error. The 7th section authorizes a defendant to be sued out of the county of his residence when the plaintiff's suit is predicated upon fraud committed by the defendant in the county where the suit is instituted. Section 23 authorizes suit against any private corporation, association or joint stock company in any county where the cause of action or a part thereof arose. We agree with the trial court on the question of law involved, and especially as to the right to sue in McLennan County under the 23d section of the statute in question.

The fourth assignment complains because a motion for a continuance was overruled. Appellant's brief does not disclose, except by inference, the ground upon which the continuance was sought. An examination of the record shows that it was sought because of the absence of the mercantile books of Carroll & Company. The application failed to show proper diligence. It was not shown that a *subpoena duces tecum* had been applied for. Mere requests or demands upon the plaintiff and Carroll & Company to have the books in court was not sufficient diligence.

The fifth, sixth and seventh assignments challenge the findings of fact and conclusions of law, which resulted in the trial court's holding that appellant was not entitled to rescind its contract of sale with Carroll & Company. There is evidence in the record supporting the material findings upon that issue; and, taking the facts as found, we are of opinion that the right to rescind was not shown.

There are some other minor questions presented in appellant's briefs, but they do not show that reversible error was committed.

Our conclusion is that the judgment should be affirmed, and it is so ordered.

*Affirmed.*